RCA RECORDS, A DIVISION OF RCA CORPORATION, MCA Records, Inc., Atlantic Recording Corporation and CBS, Inc., Plaintiffs,

v.

ALL–FAST SYSTEMS, INC. d/b/a Ditto Copy Press, Defendants.

No. 84 Civ. 631–CSH.

United States District Court, S.D. New York.

Sept. 7, 1984.

---

Stein, Zauderer, Ellenhorn, Friedman & Kaplan, New York City, for plaintiffs; Sidney Stein, New York City, of counsel.

N. George Turchin, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiffs manufacture pre-recorded, copyrighted cassettes. Defendant runs a New York retail copy service. Its primary

source of revenue is photo-copying, but, until recently, it also operated a "Rezound" cassette-copying machine. The Rezound machine copies recorded cassette tapes onto specially designed blank cassettes, which defendant sold to customers who wished to use the machine. Plaintiffs have provided evidence which suggests that defendant used this machine to aid its customers in copying plaintiffs' pre-recorded, copyrighted cassettes. They have requested a preliminary injunction enjoining further use of the Rezound for this purpose and directing seizure of the machine.

Defendant has not challenged the evidence of copying. Instead, it has informed the Court that it sent the Rezound machine back to the manufacturer one week after plaintiffs filed for a preliminary injunction (and several months after this lawsuit's filing). Defendant argues that this action renders the motion moot and removes any necessity for entry of an injunction.

## I.

In order to obtain preliminary relief, plaintiffs must make a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sadowsky v. City of New York*, 732 F.2d 312, 313, 316 (2d Cir. 1984), quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). I address first the probability of plaintiffs' demonstrating illegal infringement.

■ The uncontested evidence is that on three occasions plaintiffs' agents walked into defendant's store, handed defendant's salesperson a pre-recorded copyrighted tape on which the copyright symbols were clearly displayed, and requested that a copy be made. The salesperson promptly made a monaural copy of the original tape using the Rezound machine. Plaintiffs' agents paid approximately five dollars for this copy, somewhat less than the retail purchase price of a copyrighted stereo tape. The evidence indicates that the salespeople were well aware of both the copyrighted nature of the tapes copied and the wrongfulness of the copying. Indeed, a decal warning against such copying was plastered on the machine.

■ A clearer case of copyright infringement could hardly be imagined. The elements of infringement are ownership by the plaintiff of original, copyrighted works and copying by the defendant. *Plymouth Music Co. v. Magnus Organ Corp.*, 456 F.Supp. 676, 679 (S.D.N.Y.1978) (Pierce, J.). Defendant contests neither the originality of the musical works on the cassettes nor the legitimacy of plaintiffs' copyrights. Nor does it contest that its salespeople made exact (save for the switch from stereo to monaural sound) duplicates of these works and sold them to plaintiffs' agents.

In a parallel case, Judge Neaher found infringement by a store which sold blank tapes to its customers for use in an on-the-premises "Make-A-Tape" machine. *Elektra Records Co. v. Gem Electronic Distributors, Inc.*, 360 F.Supp. 821 (E.D.N.Y. 1973). The Make-A-Tape operated just like the Rezound: both the original and a blank tape were placed in the machine, a button was pushed, and the original was copied onto the blank tape. Customers were able, if they wished, to select the pre-recorded tape from a library maintained by the defendant. Judge Neaher found that the defendant's sale of blank tapes and its facilitation of copying by providing easy access to the Make-A-Tape "clearly evidences [the Make-A-Tape's] commercial exploitation by defendant for profit in derogation of plaintiffs' rights of exclusive publication." 360 F.Supp. at 823. It is true that, as defendant points out, the defendant in *Elektra* provided the originals as well as the machine for copying, but this distinction is of no import under these circumstances. The significant element of a copyright violation is the copying. Defendant's agents did this themselves. Supplying the original creates a more egregious case of contributory in-

fringement, perhaps, but plaintiffs need not rely on this theory in light of the personal participation of defendant's agents in the copying process, a factor absent in *Elektra Records*.

Also irrelevant is the distinction that the Rezound machine makes only monaural copies. Such copies contain nearly all the artistic information encoded onto the original. It is true that the "presence" provided by stereo is absent, but the monaural copies capture enough of what is desirable or pleasurable—and thus protectible—in a musical work to qualify as the type of copies forbidden by the copyright laws. Defendant cannot rely on what is essentially a technological flaw in its copy machine to escape the reach of these laws.

I find frivolous defendant's argument that plaintiffs have presented no evidence of wrongful copying. Three times defendant's employees willingly and knowingly copied copyrighted tapes for plaintiffs' investigators. Assuming that this particular copying was, as defendant argues, consented to by plaintiffs, the evidence establishes a strong inference, which defendant has done nothing to rebut, that the employees would and did do exactly the same copying for customers unconnected with plaintiffs. I find this to be more than adequate evidence of wrongful copying. I conclude, therefore, that plaintiffs have shown the requisite likelihood of success on the merits.

■ An essential requirement for preliminary relief is, of course, a showing of irreparable harm. The showing of irreparable harm in a copyright infringement case need not be extensive, since such harm can normally be presumed. *Town of Clarkstown v. Reeder*, 566 F.Supp. 137, 140 (S.D.N.Y.1983). Plaintiffs point out that by spreading inferior monaural copies of stereophonic tapes, defendant undermines plaintiffs' customers' good will. Of course, this practice also interferes with plaintiffs' efforts to portray their artists' performances with maximum fidelity and the greatest aesthetic impact. Further, as Judge Neaher noted in *Elektra*, 360

F.Supp. at 823 n. 6, the sale of copies disrupts the royalties—based contracts between artists and recording companies. All of these factors combine to meet the lesser standard of irreparable harm which is applied to copyright infringement actions.

## II.

■ Defendant argues that its return of the Rezound machine to its manufacturer renders the entry of an injunction pointless and the motion moot. I do not agree. Without an injunction, defendant is free to reacquire the machine and pick up where it left off. Plaintiffs have demonstrated that defendant has performed harmful, illegal acts, and they have a right to an injunction preventing future similar acts unless defendant can demonstrate that there is no "reasonable expectation" that the wrong will be repeated. *United States v. W.T. Grant*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Defendant assures the Court that it has no intention of reacquiring the Rezound machine. Accepting *arguendo* defendant's assurance at face value, it would eliminate any expectation that this particular machine will be used for further infringing purposes. But *quaere* whether plaintiffs are required to place childlike trust in defendant's assurances; and in any event, defendant has not said that it will never acquire any machine of this type. Since defendant's business is copying things, it is not unreasonable to expect, in the absence of a contrary assurance, that a different machine might in the future be used for a similar purpose. Defendant's persistence in pursuing its infringing activities—copying continued after this lawsuit was filed and plaintiffs had indicated their intention to move for injunctive relief—undercuts any impulse to infer from its promises to forgo the Rezound machine that it intends to give up this type of copying altogether.

■ Plaintiffs have satisfied the requirements for preliminary injunctive relief and are still entitled to it despite defendant's return of the machine. Although defend-

ant argues that plaintiffs' laches should bar injunctive relief, it has not shown any prejudice from the alleged delay. Since this is an essential component of that equitable defense, *Olegario v. United States*, 629 F.2d 204, 221 (2d Cir.1980), *cert. denied*, 450 U.S. 980, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981), the defense fails. An appropriate injunction will enter.

## III.

The terms appropriate to the injunction remain to be determined. Plainly plaintiffs are entitled to an order preliminarily enjoining defendant from using the Rezound machine to duplicate their copyrighted recordings. Further, in order to be meaningful the injunction must also forbid contributory infringement—that is, infringement involving defendant's machines but not its employees. It must not only forbid defendant's employees from making the copies but also prevent defendant from selling Rezound cassettes—the only type of cassette which can be successfully used in a Rezound machine—to customers who defendants know or have reasonable cause to believe intend to use the machine to copy plaintiffs' copyrighted recordings. I reject defendant's argument that *Sony Corp. of America v. Universal City Studios*, —— U.S. ——, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) somehow forbids entry of such an injunction. *Sony Corp.* holds that the manufacturer of a machine which can be used to copy protected broadcasts, but which is "capable of substantial noninfringing uses," cannot be held liable as a contributory infringer. ——, 104 S.Ct. 788. The Court recognized the need to protect the copyright-holder's statutory monopoly, but it held that the competing right of others "freely to engage in substantially unrelated areas of commerce" must be weighed against this need. *Id.* The Court found the potential burden on the protected right to outweigh the threat to the protected monopoly.

The *Sony Corp.* decision extends protection only to the manufacturer of the infringing machine, not to its operator. The Court recognized that contributory infringer status had traditionally been given to those who were "in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner." ——, 104 S.Ct. 786. It did not purport to alter this long-standing rule. The manufacturer of the machine does not fit this definition since it has no such control once the machine is sold. Defendant, in contrast, is in a position to exercise complete control over the use of the Rezound machine. Since only Rezound cassettes sold by defendant can be used in the machine, defendant is aware of each use of the machine and is in a position to prevent such use by withholding sale of the cassette. It thus can control its customers' infringing activities, and by selling cassettes to potential infringers it effectively authorizes the improper use. It fits the traditional definition of a contributory infringer.

Further, accepting for purposes of this motion for preliminary relief defendant's claim that the machine is capable of substantial legitimate uses, I do not find that requiring defendant to avoid contributory infringement will be an undue burden on its right to pursue those legitimate uses. The manufacturer of the machine makes but one commercial choice: to sell or not to sell its machine. Thus a finding of contributory infringement is a substantial burden, for the manufacturer's only means of stopping the infringing use is to stop selling the machine entirely. Defendant, however, faces no such Hobson's choice. It makes hundreds of commercial decisions in exploiting the machine—a choice every time it sells a cassette for use in the machine. It need have no impact on sales of cassettes for legitimate copying for defendant to cease selling to infringing customers. To do so may raise defendant's costs slightly, but this is a proper burden for it to bear if it wishes to profit from a machine which can so easily be used for improper purposes.

■ Plaintiffs, however, request more than cessation of infringement. They ask

for seizure of the machine, in effect an injunction against all use of the Rezound copier. This I will not grant. The authority to order seizure is given by 17 U.S.C. § 503(a), and exercise of that authority lies in the discretion of the Court. *Martin Luther King, Jr. Center for Social Change, Inc. v. American Heritage Products, Inc.*, 508 F.Supp. 854, 861 (N.D.Ga. 1981), *rev'd on other grounds*, 694 F.2d 674 (11th Cir.1983). In support of their request plaintiffs cite *Duchess Music Corp. v. Stern*, 458 F.2d 1305 (9th Cir.), *cert. denied*, 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972), in which the Ninth Circuit held it error for a district court not to order impoundment of machines used by record pirates to copy copyrighted records and cassette tapes. The distinction between the defendants in that case and this, however, viewed in light of the *Sony Corp.* case, convinces me that seizure here is inappropriate.

The sole activity of record pirates is furtively to make and sell copies of protected recordings. The machines seized in *Duchess Music* presumably could have been put to noninfringing uses in others' hands, but the defendants used them solely for the purpose of illegal copying. Seizure not only insured that the illegal activities would cease but was unlikely to interfere with legal activities. In contrast, defendant provides evidence that the primary use made of its Rezound machine was to copy non-copyrighted cassettes, and plaintiffs have failed to convince me that they are likely to prove otherwise. An order of seizure in this action would thus prevent the legitimate and socially beneficent uses of the Rezound machine. There is no reason to do this if an injunction is sufficient to prevent improper use, and I believe at this time that it will be.

■ Finally, plaintiffs request attorneys' fees. I deny the request at this time. Plaintiffs' first authority for recovery, 17 U.S.C. § 505, permits an award of fees in a copyright action to a "prevailing party." Although plaintiffs appear quite likely to prevail in the action eventually, it is not yet

terminated. An award of fees under this statute would thus be premature. *Corcoran v. Columbia Broadcasting System, Inc.*, 121 F.2d 575 (9th Cir.1941), cited by plaintiffs in support of the application, is not to the contrary, since there a voluntary dismissal terminated the lawsuit prior to an award of fees. If plaintiffs ultimately prevail, they may renew their request.

■ Second, I do not find defendant's opposition to this motion so frivolous as to justify a punitive award of attorneys' fees. It is true that on the evidence presented it is virtually beyond dispute that some type of injunction is warranted, but defendant was justified in opposing the terms of the injunction as proposed by plaintiffs. It properly held out for judicial resolution of these terms. Granted it could have saved plaintiffs money by consenting to an injunction before the motion was made and presenting to the Court solely the issue of its terms, but this factor can be considered in setting the level of § 505 attorneys' fees should plaintiffs ultimately prevail.

For the reasons stated above, I enter the following preliminary injunction, which will remain in effect until a permanent injunction is entered or until this action is otherwise terminated. It is hereby

ORDERED, that defendant All-Fast Systems, Inc. and its agents are preliminarily enjoined from:

1) reproducing plaintiffs' copyrighted sound recordings;

2) using a Rezound cassette copy machine, or any other instrumentality which is capable of duplicating plaintiff's copyrighted sound recordings, for the purpose of such reproduction; and

3) selling Rezound cassette tapes or other blank cassette tapes which defendant knows or has reason to believe will be used in reproducing plaintiffs' copyrighted sound recordings. This order is not intended to prevent defendant from selling standard-sized and -styled blank tapes for use in recording machines not maintained by defendant so long as defendant does not know or have specific, individualized reason

to believe that the person purchasing the tape intends to use it for copying plaintiffs' copyrighted sound recordings.

The parties are directed to conclude all further discovery, presumably focusing on the issues surrounding entry of a permanent injunction and setting damages, by November 30, 1984.

It is SO ORDERED.