**SYNTEK SEMICONDUCTOR CO., LTD., Plaintiff–Appellant,**

v.

**MICROCHIP TECHNOLOGY INCORPORATED, Defendant–Appellee.**

**Nos. 00–17352, 00–17353 and 01–15641.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 18, 2001.

Filed April 8, 2002.

Amended Aug. 16, 2002.

Second Amendment Oct. 2, 2002.

Sean D. Garrison, Lewis and Roca LLP, Phoenix, AZ, for the plaintiff-appellant.

Chad S. Campbell, Brown & Bain, P.A., Phoenix, AZ, for the defendant-appellee.

Before: GOODWIN, HUG and THOMAS, Circuit Judges.

## ORDER

The opinion filed April 8, 2002 appearing at 285 F.3d 857 (9th Cir.2002) is amended as follows:

At 285 F.3d at 864, delete all text from "However, if application of the doctrine of primary jurisdiction is limited to an issue in the pending action, rather than the entire dispute, then the court normally should stay the proceedings pending agency action" up to an including the last sentence of Section IV.

In lieu thereof, replace with the following material: "However, the question of whether a party is "unfairly disadvantaged" by dismissal must also be considered. *Reiter*, 507 U.S. at 268–69, 113 S.Ct. 1213. Because the statute of limitations may prevent Syntek from refiling its claim if necessary at the conclusion of its administrative challenge to the Copyright Office's decision, we stay the proceedings pending the outcome of the administrative process."

With the opinion thus amended, the panel denies Syntek's petition for rehearing.

IT IS SO ORDERED.

## ORDER

The mandate issued on September 9, 2002 is hereby recalled.

The opinion filed April 8, 2002 appearing at 285 F.3d 857 (9th Cir.2002) is further amended as follows:

1. At 285 F.3d at 859, delete the phrase "We conclude that, under the circumstances presented by this case, the doctrine of primary jurisdiction requires dismissal of this action in order that the parties may pursue administrative remedies."

In lieu thereof, replace with the following material: "We conclude that, under the circumstances presented by this case, the doctrine of primary jurisdiction requires us to stay this action in order that the parties may pursue administrative remedies."

2. At 285 F.3d at 864, delete the phrase "We vacate the judgment of the district court and remand with instructions to dismiss the action without prejudice pursuant to the primary jurisdiction doctrine in order that the parties may pursue appropriate administrative remedies before the Copyright Office."

In lieu thereof, insert the following sentence: "We vacate the judgment of the district court and remand with instructions to stay the action pursuant to the primary jurisdiction doctrine in order that the parties may pursue appropriate administrative remedies before the Copyright Office."

The mandate shall issue forthwith.

IT IS SO ORDERED.

## OPINION

THOMAS, Circuit Judge.

In this appeal, we consider whether a party may obtain a judgment declaring that a copyright registration owned by another is invalid. We conclude that, under the circumstances presented by this case, the doctrine of primary jurisdiction requires us to stay this action in order that the parties may pursue administrative remedies.

I

Both Syntek Semiconductor Co., Ltd. ("Syntek"), a Taiwanese corporation, and Microchip Technology Inc. ("Microchip"), a Delaware corporation, design, manufacture, and sell microcontrollers. Microcontrollers, occasionally referred to as microcomputers, are highly integrated circuits used to control a particular system or process in an electronic product. The operation of microcontrollers is dictated by low level programming microinstructions called microcode, which are fixed in storage. Microchip manufactures and sells the PIC 16C5x microcontrollers, which contain the PIC 16C5x microcode at issue in this action. Syntek challenges the validity of Microchip's U.S. copyright registration of the PIC 16C5x microcode.

The parties' dispute began in 1992, when Microchip came to believe that Syntek had begun to make and sell unauthorized clones of Microchip's PIC 16C5x microcontrollers in Taiwan. In anticipation of potential litigation against Syntek, Microchip registered its PIC 16C5x microcode with the U.S. Copyright Office. In late 1992, Microchip filed a complaint for copyright infringement against Syntek in the Taipei District Court. The Taiwan public prosecutor indicted Syntek in 1993. Syntek and Microchip settled that lawsuit, with Syntek agreeing to pay Microchip $400,000 and cease manufacturing the products that Microchip had identified as infringing.

In 1994, Microchip again came to believe that Syntek was manufacturing and selling products that infringed Microchip's copyright in the PIC 16C5x microcode. Microchip investigated and then presented its findings to the public prosecutor in Taiwan, who indicted Syntek and two of its senior officers for criminal copyright infringement. In April of 1999, the Taiwan criminal court found Syntek's officers

guilty of criminal copyright infringement. Syntek has appealed that decision.

In March of 1999, as the Taiwan criminal proceedings were drawing to a close, Syntek filed this suit, challenging the validity of Microchip's copyright registration. In this suit, Syntek alleges that it has been harmed by Microchip's possession of an invalid copyright registration in two distinct ways. First, Syntek alleges that it has been harmed by Microchip's ability to use its copyright registration as evidence in the Taiwan court proceedings. Second, Syntek alleges that it has been harmed by Microchip's ability to use its registration to threaten Syntek's customers with liability for copyright infringement if they purchase Syntek's products. In response to these harms, Syntek filed this action seeking a declaratory judgment that Microchip's U.S. copyright registration of the PIC 16C5x microcode is invalid because Microchip did not comply with the applicable regulations when registering its program. The district court granted summary judgment for Microchip on the basis that Microchip complied with applicable copyright regulations. Syntek timely appealed.

## II

■■■ Microchip's PIC 16C5x microcode is a computer program. Computer programs are works of authorship entitled to protection under the Copyright Act. 17 U.S.C. § 101, 102. The Copyright Act defines a computer program as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." 17 U.S.C. § 101. Computer programs can be expressed in either source code or object code. "Source code is the computer program code as the programmer writes it, using a particular programming language." Compendium of Copyright Office

Practices, § 321.01. Source code is a high level language that people can readily understand. "Object code is the representation of the program in machine language [binary] . . . which the computer executes." Id. at § 321.02. Source code usually must be compiled, or interpreted, into object code before it can be executed by a computer. Object code can also be decompiled into source code. Source code and object code are "two representations of the same computer program. For registration purposes, the claim is in the computer program rather than in any particular representation of the program." Id. at § 321.03. However, source code created by decompiling object code will not necessarily be identical to the source code that was compiled to create the object code.

The Copyright Act requires that a party seeking to register a copyright deposit two complete copies of a published work, 17 U.S.C. § 408(b)(2), where copies are defined as "material objects . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101. The Copyright Act allows the Register to "require or permit . . . the deposit of identifying material instead of copies" for particular types of works. 17 U.S.C. § 408(c)(1). The Register has enacted regulations which allow for the deposit of "identifying portions," rather than copies, for computer programs. 37 C.F.R. § 202.20(c)(2)(vii)(A). The regulations define "identifying portions" as "[t]he first and last 25 pages . . . of the source code" or the entire source code if the program is 50 pages or less. 37 C.F.R. § 202.20(c)(2)(vii)(A)(1). The regulations do not explicitly provide for the deposit of object code. However, both Copyright Office Circular 61, Copyright Registration

for Computer Programs, and Compendium II, the Compendium of Copyright Office Practices, allow for the deposit of object code instead of source code. Circular 61, page 2; Compendium II, § 324.04. Both of these publications provide that the deposit of object code leads to a rule of doubt registration, or a registration without the ordinary presumption of validity, because the deposit of object code does not allow the Register to determine the existence of copyrightable material. *Id.*

Microchip did not have in its possession the original PIC 16C5x source code when it registered its program with the Copyright Office; so Microchip deposited source code that it had decompiled from the object code embedded in the PIC 16C5x computer chip. Microchip informed the Copyright Office of the nature of its deposit, stating that "[t]he source code listing provided ... is a listing which was regenerated from the object code of the work because Applicant could not, after a reasonable search, find a listing of the source code of the work." Provided with this information, the Copyright Office registered Microchip's copyright. Syntek claims that the Copyright Office should not have registered the code because the decompiled source code that Microchip deposited did not comply with the applicable regulations as it is not a bona fide copy of the original source code.[1]

### III

Under the doctrine of primary jurisdiction, the issues presented by this case are properly considered first by the Register of Copyrights.[2] Primary jurisdiction is not a doctrine that implicates the subject matter jurisdiction of the federal courts. Rather, it is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts. As we recently noted, "[p]rimary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir.2002). It is not, as we have emphasized, a doctrine that "require[s] that all claims within an agency's purview to be decided by the agency." *Id.* "Nor is it intended to 'secure expert advice' for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Id.* (quoting *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1365 (9th Cir.1987)). Rather, it is a "doctrine used by the courts to allocate initial decisionmaking responsibility between agencies and courts where such [jurisdictional] overlaps and potential for conflicts exist." Richard J. Pierce, Jr., *Administrative Law Treatise* § 14.1, p. 917 (4th ed.2002).

The doctrine of primary jurisdiction is not equivalent to the requirement of

---

1. On appeal, Syntek also contends that Microchip's copyright registration is invalid for fraud on the Copyright Office. *See Urantia Found. v. Maaherra,* 114 F.3d 955, 963 (9th Cir.1997) (noting that knowing errors on the registration application that might have caused the Copyright Office to reject the application may affect the validity of the registration). However, Syntek did not sufficiently raise this claim below, and so we decline to address it. *See Whittaker Corp. v. Execuair Corp.,* 953 F.2d 510, 515 (9th Cir.1992).

2. Although the parties did not raise the question of primary jurisdiction, we may do so *sua sponte. Cf. Pace v. Honolulu Disposal Serv., Inc.,* 227 F.3d 1150, 1156 (9th Cir.2000) (describing *sua sponte* consideration of the National Labor Relations Act primary jurisdiction doctrine).

exhaustion of administrative remedies. *Brown*, 277 F.3d at 1173. "Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). In contrast, the doctrine of primary jurisdiction is committed to the sound discretion of the court when "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir.1987) (quoting *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 353, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963)). Although the question is a matter for the court's discretion, courts in considering the issue have traditionally employed such factors as (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration. *General Dynamics Corp.*, 828 F.2d at 1362. When these factors are considered in the present context, the desirability of applying the doctrine of primary jurisdiction is apparent.

First, Congressional intent to have national uniformity in copyright laws is clear. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 n. 7, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *see also* 17 U.S.C. § 301.

Second, the question of whether decompiled object code qualifies for registration as source code under the Copyright Act and regulations is an issue of first impression. It also involves a complicated issue that Congress has committed to the Regis-ter of Copyrights. *See, e.g.*, 17 U.S.C. § 701.

■ Third, it is important to note that Syntek does not seek a declaratory judgment that Microchip's copyright is invalid, just that Microchip's copyright *registration* is invalid. This is in contrast to the typical lawsuit, in which the validity of the underlying copyright, not the validity of the registration, is in dispute. In such a case, the registration is considered prima facie evidence of the validity of the copyright, which can be challenged by presenting evidence attacking the elements of a valid copyright, such as ownership, copyrightable subject matter, and originality. Those issues are absent from the instant case because Syntek's challenge is to the validity of the registration, not the copyright. Thus, resolution of the question at hand requires an analysis of whether the agency acted in conformance with its own regulations when it granted the registration. Accordingly, referral to the agency for consideration of these issues in the first instance is particularly appropriate.

Fourth, although Syntek does not phrase its complaint in these terms, the remedy Syntek seeks—a declaration of registration invalidity—is indistinguishable from the remedy of copyright registration cancellation. "Cancellation is an action taken by the Copyright Office whereby . . . the registration is eliminated on the ground that the registration is invalid under the applicable law and regulations." 37 C.F.R. § 201.7(a). The applicable regulations provide that the Copyright Office will "cancel a completed registration" if the "deposit material . . . does not meet the requirements of the law and Copyright Office regulations, and the Office is unable to get the defect corrected." 37 C.F.R. § 201.7(b). Thus, there is an administrative remedy for the relief which Syntek seeks. However, the particular contours

of the administrative cancellation remedy are not readily apparent. The Copyright Office has stated that it "does not invite, and will generally not respond favorably to, requests to cancel a completed registration by a party other than the owner of the copyright." Cancellation of Completed Registrations, 50 Fed.Reg. 33065, 33067. Further, the Registrar of Copyrights has not undertaken the task of defining a cancellation process. The absence of a formal cancellation procedure for copyright registration stands in contrast to the detailed rules pertaining to cancellation of a federal trademark registration. *See* 15 U.S.C. § 1064; 37 C.F.R. § 2.111, *et seq.* Nonetheless, there is an administrative process for cancellation, albeit ill-defined, in the Copyright Office. Referral under the doctrine of primary jurisdiction is therefore appropriate for the Register of Copyrights to determine to what extent administrative cancellation remedies are available to third parties who seek registration cancellation.

In sum, this case requires the resolution of an issue within the jurisdiction of an administrative body exercising statutory and comprehensive regulatory authority over a national activity that requires expertise and uniformity in administration. Under these circumstances, the application of the primary jurisdiction doctrine is appropriate, and the matter is referred to the Register of Copyrights.

IV

 "Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties

would not be unfairly disadvantaged, to dismiss the case without prejudice." *Reiter*, 507 U.S. at 268–69, 113 S.Ct. 1213. Thus, having decided that referral of this matter to the administrative agency is appropriate,[3] we must also determine whether this action should be stayed or dismissed without prejudice.

 Normally, if the court concludes that the dispute which forms the basis of the action is within the agency's primary jurisdiction, the case should be dismissed without prejudice so that the parties may pursue their administrative remedies. Pierce, at § 14.1. However, the question of whether a party is "unfairly disadvantaged" by dismissal must also be considered. *Reiter*, 507 U.S. at 268–69, 113 S.Ct. 1213. Because the statute of limitations may prevent Syntek from refiling its claim if necessary at the conclusion of its administrative challenge to the Copyright Office's decision, we stay the proceedings pending the outcome of the administrative process.

V

Because of our resolution of this case, we need not decide whether a private right of action exists for cancellation of a copyright registration, nor whether remedies are available under 17 U.S.C. § 701(e), nor any other question urged by the parties. Those arguments may be renewed, if appropriate, after action by the Copyright Office. We express no opinion on the merits of the questions presented.

We vacate the judgment of the district court and remand with instructions to stay the action pursuant to the primary juris-

---

**3.** "Referral" is the term of art employed in primary jurisdiction cases. In practice, it means that a court either stays proceedings, or dismisses the case without prejudice, so that the parties may pursue their administrative remedies. *Reiter*, 507 U.S. at 268 n. 3, 113 S.Ct. 1213. There is no formal transfer mechanism between the courts and the agency; rather, upon invocation of the primary jurisdiction doctrine, the parties are responsible for initiating the appropriate proceedings before the agency.

diction doctrine in order that the parties may pursue appropriate administrative remedies before the Copyright Office. We vacate as premature the award of attorneys fees.

**JUDGMENT VACATED AND REMANDED WITH INSTRUCTIONS.**