FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GOLD VALUE INTERNATIONAL
TEXTILE, INC., DBA Fiesta Fabric, a
California Corporation,
              *Plaintiff-Appellant*,

v.

SANCTUARY CLOTHING, LLC, a
California Limited Liability
Company; AMAZON.COM, INC., a
Washington Corporation; MACY'S,
INC., an Ohio Corporation;
NORDSTROM, INC., a Washington
Corporation; BLOOMINGDALES, INC.,
a New York Corporation; DILLARDS,
INC., an Arkansas Corporation;
ZAPPOS IP, INC., a Nevada
Corporation; DOES, 1–10,
              *Defendants-Appellees*.

No. 17-55818

D.C. No.
2:16-cv-00339-
JAK-FFM

OPINION

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted December 6, 2018
Pasadena, California

Filed June 4, 2019

Before:  Diarmuid F. O'Scannlain and Sandra S. Ikuta,
Circuit Judges, and George Caram Steeh III,[*]
District Judge.

Opinion by Judge Steeh

---

## SUMMARY[**]

### Copyright

The panel affirmed the district court's summary judgment and award of attorney's fees in favor of the defendants in an action under the Copyright Act.

Gold Value International Textile, Inc., doing business as Fiesta Fabric, alleged that defendant Sanctuary Clothing, LLC, copied its fabric design, which was used to manufacture a blouse that was sold by defendant retail outlets.  Sanctuary filed a counterclaim, seeking invalidation of Fiesta's copyright.  Concluding that Fiesta's copyright registration was invalid, the district court granted summary judgment in favor of defendants.

The panel affirmed the district court's conclusion that Fiesta's copyright registration was invalid under 17 U.S.C. § 411(b) because Fiesta knowingly included inaccurate information in its copyright application that would have

---

[*] The Honorable George Caram Steeh III, United States District Judge for the Eastern District of Michigan, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

caused the Copyright Office to deny registration. Specifically, Fiesta knowingly included previously published designs in its application to register an unpublished collection. In addition, the Register of Copyrights indicated that it would not publish a single group of published and unpublished works. Because a valid registration is a precondition to bringing an action for infringement, the panel affirmed the district court's grant of summary judgment in favor of defendants.

The panel further held that defendants were prevailing parties, and the district court did not abuse its discretion in awarding attorney's fees under 17 U.S.C. § 505 even though defendants prevailed on a technical defense.

## COUNSEL

Scott Alan Burroughs (argued) and Trevor W. Barrett, Doniger/Burroughs, Venice, California, for Plaintiff-Appellant.

Jessica Strom Rutherford (argued), Alexander Malbin, and Edmund J. Ferdinand III, Ferdinand IP LLC, New York, New York, for Defendants-Appellees.

**OPINION**

STEEH, District Judge:

Gold Value International Textile, Inc., doing business as Fiesta Fabric ("Fiesta"), brought this action for copyright infringement against Sanctuary Clothing, LLC ("Sanctuary"), and several clothing retailers. Fiesta alleges that Sanctuary copied its fabric design, which was used to manufacture a blouse that was sold by the defendant retail outlets. Sanctuary filed a counterclaim, seeking invalidation of Fiesta's copyright. Concluding that Fiesta's copyright registration was invalid, the district court granted summary judgment in favor of Defendants. The district court determined invalidity pursuant to 17 U.S.C. § 411(b), finding that Fiesta knowingly included inaccurate information in its copyright application that would have caused the Copyright Office to deny registration. Recognizing that a valid copyright registration is a prerequisite to bringing suit, the district court dismissed Fiesta's complaint. The court also awarded attorney's fees and costs to Defendants. Fiesta appeals the final judgment as of right. Finding no error in the conclusions of the district court, we affirm.

*BACKGROUND*

Fiesta is a California corporation that creates textile designs and sells fabric to its customers, who use the fabric to make clothing. Sanctuary is a clothing manufacturer; the remaining defendants are retailers who purchased garments from Sanctuary and sold them to customers. Fiesta alleges that it owns the copyright in a two-dimensional textile design entitled 1461-43 ("1461 Design"). According to Fiesta, Sanctuary infringed its copyright by creating and selling

clothing to retailers featuring a design substantially similar to the 1461 Design.

Effective October 24, 2013, Fiesta registered the 1461 Design under Copyright Registration No. VAu 1-151-509 ("'509 Registration"), as part of its "Grp. 029-Spring/Summer 2014" collection. In addition to the 1461 Design, the '509 Registration comprises thirty-three fabric designs. In the copyright application, Fiesta's president, Morris Ajnassian, certified that none of the works in the collection had been published as of October 23, 2013. The fabric designs were registered as an unpublished collection.

Prior to the registration, Fiesta sold samples of fabric bearing the 1461 Design to "a limited group of existing and potential customers for the limited purpose of securing full production contracts for hundreds or thousands of yards of fabric." Between March 12, 2013, and October 24, 2013, Fiesta sold about 190 yards of fabric featuring the 1461 Design. Ajnassian testified that he knew that sample fabric bearing the 1461 Design had been sold prior to approving the copyright registration application, but that he did not consider sampling to be publication.

*PROCEDURAL HISTORY*

In ruling on the parties' cross-motions for summary judgment, the district court determined that because the 1461 Design had been sold prior to registration, it had been published and, therefore, Fiesta's identification of the 1461 Design as unpublished in the copyright application was inaccurate. Because Fiesta knew that the fabric had previously been sold, the court concluded, it included inaccurate information in its copyright application with knowledge that it was inaccurate. The court deferred a final ruling on whether Fiesta's copyright registration was

invalid, and submitted an inquiry to the Copyright Office regarding whether the Register of Copyrights would have rejected Fiesta's application if it had known of the inaccuracy. Specifically, the district court inquired as follows:

> Would the Register of Copyrights have rejected Plaintiff's Registration No. VAu 1-151-509 for 2-dimensional artwork ("Grp.029-Spring/Summer 2014," filed October 24, 2013) with respect to Design 1461? Thus, would it have done so if, at the time of the application, the Register of Copyrights had known that, although Plaintiff had characterized the work as an unpublished collection that included the 1461 Design, Plaintiff previously had published the 1461 Design when it sold to its customers fabric samples that used the 1461 Design, without limiting further distribution or sale by those customers?

The Register of Copyrights responded that "had the Office been aware that the 1461 Design had been previously published, the Office would have refused registration of that work using the unpublished collections option because the work was registered as unpublished when in fact it had been published." As the district court explained, "[t]he Register noted that if it is made aware of an error at the time of application, the general practice of the Copyright Office is to correspond with the applicant and give an opportunity to correct the error" within forty-five days. The Register's response was "premised on the fact that the error identified in the Court's question was not timely corrected."

In light of the Register's response, the district court granted Defendants' motion for summary judgment, declaring Fiesta's copyright registration to be invalid as to the 1461 Design and dismissing Fiesta's claims with prejudice.  Defendants moved for an award of attorney's fees and costs, which the district court granted in the amount of $121,423.01.

In the meantime, Fiesta submitted a separate copyright registration application for the 1461 Design, certifying that it was first published on March 12, 2013, approximately six months prior to the date of the original '509 Registration. The Copyright Office issued Registration No. VA 2-006-252 (the "'252 Registration").  Citing Fiesta's lack of diligence, the district court denied Fiesta leave to amend its complaint to add the '252 Registration as the basis for its claims.  Fiesta has not appealed this ruling.  Rather, Fiesta filed a second action based upon the '252 Registration of the 1461 Design. *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 2:17-cv-03726 (C.D. Cal.).  The parties stipulated to a stay of the second action pending the resolution of this appeal.

## *STANDARD OF REVIEW*

The court reviews the district court's grant of summary judgment de novo.  *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012).   "Summary judgment is appropriate if, viewing the evidence in light most favorable to the nonmoving party, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Id*. (quoting Fed. R. Civ. P. 56(a)).

The court reviews an award of attorney's fees under the Copyright Act for an abuse of discretion.  *Cadkin v. Loose*, 569 F.3d 1142, 1146–47 (9th Cir. 2009).  "A district court

abuses its discretion when its decision is based on an inaccurate view of the law or a clearly erroneous finding of fact." *Id.* at 1147 (citation omitted).

*DISCUSSION*

Although copyright registration is "not a condition of copyright protection," registration is a precondition to filing an action for copyright infringement. 17 U.S.C. §§ 408(a), 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) (with some exceptions, the Copyright Act "requires copyright holders to register their works before suing for copyright infringement"). A copyright registration certificate "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

The Prioritizing Resources and Organization for Intellectual Property Act of 2008 (the "PRO IP Act") amended the Copyright Act to include a new provision, 17 U.S.C. § 411(b) (2008). Section 411(b) provides that a "certificate of registration satisfies the [registration requirement of § 411(a)], regardless of whether the certificate contains any inaccurate information," unless (1) "the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate," and (2) "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1).

Prior to the PRO IP Act, "we have held that 'inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement.'" *L.A. Printex*, 676 F.3d

at 853 (quoting *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997)); *see also Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) ("Good faith mistakes in copyright applications do not preclude an infringement action.").

A copyright owner may file an application for supplementary registration "to correct an error in a copyright registration or to amplify the information given in a registration."    17 U.S.C. § 408(d).    "The information contained in a supplementary registration augments but does not supersede that contained in the earlier registration."  *Id.*

The Copyright Act regulations permit a work to be registered separately, or under certain circumstances, as part of a group of related works:

> For the purpose of registration on a single application and upon payment of a single registration fee, the following shall be considered a single work:
>
> (A) In the case of published works: all copyrightable elements that are otherwise recognizable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same; and
>
> (B) In the case of unpublished works: all copyrightable elements that are otherwise recognizable as self-contained works, and are combined in a single unpublished "collection."

37 C.F.R. § 202.3(b)(4)(i) (2007).**[1]**  The Copyright Office will not accept a group of published and unpublished works in a single registration, as such a grouping does not satisfy either (A) or (B) above.  *Id.*; *see also L.A. Printex*, 676 F.3d at 853–54.  A work is published for purposes of the Copyright Act when copies are distributed "to the public by sale or other transfer of ownership, or by rental, lease, or lending" or offered to be distributed "to a group of persons for purposes of further distribution, public performance, or public display."  17 U.S.C. § 101.

## I.  *Inaccurate Information in Copyright Registration*

Fiesta argues that the district court erred in finding that it included inaccurate information in its application for copyright registration.  The 1461 Design was registered as part of an unpublished collection.  Fiesta suggests that it made a mistake by failing to include a publication date in its application, which could be corrected by a supplemental registration.  Fiesta's error was to include published works in an unpublished collection, however.  Adding a publication date to the application would not correct this error, because the Copyright Office would not have registered a published design as part of an unpublished collection.  *See L.A. Printex*, 676 F.3d at 853–54 (characterizing the inclusion of two previously published designs in a work registered as an unpublished collection as an "error").

Fiesta next argues that the '509 Registration is not inaccurate, because the entire collection of works had never

---

**[1]** The regulations have been amended, effective March 15, 2019, to include a new section regarding group registration of unpublished works. The new regulation provides that "[a]ll the works in the group must be unpublished."  37 C.F.R. § 202.4(c)(1) (2019).

been published together as a collection, and therefore the *collection* was properly registered as unpublished. Fiesta provides no authority for the proposition that published and unpublished works may be registered as a group, which is contrary to the regulations, guidance from the Copyright Office, and caselaw. *See, e.g.*, *id.*; 37 C.F.R. § 202.3(b)(4)(i)(B) (effective July 6, 2007) (permitting registration of "unpublished works . . . combined in a single unpublished 'collection.'"); U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 607 (2d ed. 1984) ("*Compendium II*") ("For the purpose of registration on a single application and payment of a single fee, a number of unpublished works may be registered as a single work.").[2]

Fiesta also contends that its '509 Registration was accurate because any publication of the 1461 Design was a "limited" distribution for promotional purposes and did not constitute legal publication under the limited publication doctrine. *See Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1452 (9th Cir. 1991) ("[A] publication is 'limited' . . . when tangible copies of the work are distributed both (1) to a 'definitely selected group,' and (2) for a limited purpose, without the right of further reproduction, distribution or sale."). In its second copyright application, however, Fiesta certified that

---

[2] The third edition of the *Compendium* was issued in 2014. U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* (3d ed. 2014) ("*Compendium III*"). Although the Register would have applied *Compendium II* at the time of Fiesta's '509 Registration, the Register cited *Compendium III* in her response to the district court's inquiry, noting that "the relevant practices have not materially changed." *See generally Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 973 (9th Cir. 2008) (Copyright Register's interpretation of copyright law entitled to deference).

the date of first publication of the 1461 Design was March 12, 2013, when Fiesta began selling sample fabric bearing the 1461 Design to its customers.  Thus, Fiesta admitted that this allegedly limited distribution constituted legal publication, and that the publication occurred prior to the registration of the 1461 Design as part of an unpublished collection.

Moreover, Fiesta cannot demonstrate that it distributed the fabric "for a limited purpose, without the right of further reproduction, distribution or sale." *Id*. at 1452.  Although Fiesta's invoices included a copyright notice that prohibited copying, reproducing, or altering the fabric designs, the notice language did not prohibit customers from distributing or reselling the fabric.[3]

It is undisputed that Fiesta sold 190 yards of fabric bearing the 1461 Design before registering its copyright.  Because the 1461 Design was distributed "to the public by sale or other transfer of ownership," it was published within the meaning of the Copyright Act.  17 U.S.C. § 101; *see also Compendium II* § 905.02 (publication includes distribution to "persons who are under no implied or express restriction with respect to disclosure of the work's contents").  The district court did not err in finding that the 1461 Design had been published prior to registration and that, therefore,

---

[3] Because we find that Fiesta does not satisfy the requirements of the limited publication doctrine, we need not decide whether this doctrine remains viable under the Copyright Act of 1976.  The concept of limited publication was read into the Copyright Act of 1909 "to mitigate the harsh forfeiture effects of an improper publication" without a copyright notice.  *Am. Vitagraph, Inc. v. Levy*, 659 F.2d 1023, 1027 (9th Cir. 1981).  The 1976 Act, which applies here, does not require publication with a copyright notice, undermining the basis for the limited publication doctrine.  *See* 17 U.S.C. § 401(a).

Fiesta's '509 Registration application contained an inaccuracy.

## II.  *Knowledge of the Inaccuracy*

An inaccuracy in the application does not necessarily invalidate a copyright registration, however.  *See* 17 U.S.C. § 411(b)(1).  Rather, the inaccurate information must have been included in the application for copyright registration "with knowledge that it was inaccurate" and "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  *Id*.; *see also L.A. Printex*, 676 F.3d at 852–53.  The district court found that Fiesta knew the information in the application was inaccurate because it knew that it had previously sold fabric bearing the 1461 Design to customers when it applied for the '509 Registration.  Fiesta argues that it did not know that the sale of samples to its customers constituted publication as a matter of law under the Copyright Act, and therefore, it did not have the requisite knowledge or fraudulent intent.  The district court characterized Fiesta's position as one of "ignorance of the law," which is "no excuse," and determined that a showing of fraudulent intent is not required to invalidate a copyright registration under § 411(b).

Both parties rely upon *L.A. Printex*.  In that case, the plaintiff registered a group of five textile designs as a single unpublished collection entitled Small Flower Group A. After bringing its infringement action, L.A. Printex became aware that its copyright registration for Small Flower Group A contained an error:  two of the five designs—but not the design at issue—had been published before the date of registration.   L.A. Printex filed an application for supplementary registration to remove the two previously published designs and the Copyright Office issued a

certificate of supplementary registration for Small Flower Group A.  The defendant argued that L.A. Printex's registration for the design at issue was invalid.  Rejecting this argument, we stated that "[t]he record, when viewed in the light most favorable to L.A. Printex, does not demonstrate that L.A. Printex knowingly included previously published designs in its application for copyright registration such that the error was other than an inadvertent mistake, or that L.A. Printex intended to defraud the Copyright Office."  *Id.* at 854.

Unlike the plaintiff in *L.A. Printex*, Fiesta knowingly included previously published designs in its application to register an unpublished collection.  Fiesta was aware that it had sold yards of fabric to customers prior to registering the 1461 Design as part of an unpublished collection.  Although Fiesta asserts that it did not believe that such sales constituted publication as a matter of law, Fiesta provides no reasonable basis for this belief.  Fiesta's lack of authority or plausible explanation for its position distinguishes this case from others in which a claimant's good faith or inadvertent mistake did not constitute a knowing inaccuracy.  *See Unicolors,* 853 F.3d at 990–91 (holding claimant's inadvertent exclusion of source artwork from application did not invalidate registration because the copyright application form is a "minefield for applicants attempting to properly register a derivative work" and it was a "good faith mistake"); *Archie MD, Inc. v. Elsevier, Inc.*, 261 F.Supp.3d 512, 520 (S.D.N.Y. 2017) (holding claimant had no knowledge of inaccuracy because whether licensing the work constituted publication was an "unsettled legal question").  Moreover, "the term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law.  As Justice Jackson correctly observed, 'the knowledge requisite to knowing violation of

a statute is factual knowledge as distinguished from knowledge of the law.'" *Bryan v. United States*, 524 U.S. 184, 192 (1998) (citation omitted).

Fiesta claims that *L.A. Printex* requires a showing of fraud on the part of the claimant in order to invalidate a copyright registration. *L.A. Printex* did not address this issue, however. Although we stated that there was no evidence that the claimant intended to defraud the Copyright Office, we did not consider the issue of whether a showing of fraud is required to invalidate a registration pursuant to § 411(b). *L.A. Printex*, 676 F.3d at 853–54. We hold that Fiesta's argument is foreclosed by the plain language of § 411(b), which does not require a showing of fraud, but only that the claimant included inaccurate information on the application "with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1)(A); *see also Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" (citation omitted)).[4]

Fiesta was admittedly aware of the facts regarding its fabric sales; its inclusion of designs that it knew had been sold, and therefore published, in an unpublished collection cannot be characterized as an inadvertent or good faith

---

[4] The Eleventh Circuit held in *Roberts v. Gordy* that a showing of "intentional or purposeful concealment of relevant information" is required to render a registration invalid. 877 F.3d 1024, 1029 (11th Cir. 2017) (citation omitted). The court relied upon its prior precedent, however, without attention to the plain language of § 411(b). Section 411(b) does not mention intentional concealment or fraud, but only that the information was included "with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1).

mistake.  Thus, Fiesta included inaccurate information on its application with knowledge that it was inaccurate.

III.　　*Whether the Register of Copyrights Would Refuse Registration*

Pursuant to § 411(b)(1)(B), we next consider whether the inaccuracy would have caused the Register of Copyrights to refuse registration.  The Register has indicated that it would not register a single group of published and unpublished works.  *Compendium III* § 1106.1.  In *L.A. Printex*, the (unpublished) design at issue was registered as part of an unpublished collection.  The claimant mistakenly included two published designs in the unpublished collection.  The claimant corrected the mistake by filing a supplemental registration removing the published designs from the unpublished collection.  The Copyright Office accepted the correction and issued a certificate of supplementary registration.  *L.A. Printex*, 676 F.3d at 845–46.  The Copyright Office's decision to issue a certificate of supplementary registration "shows that the error was not one that 'if known, would have caused the Register of Copyrights to refuse registration.'"  *Id.* at 854 (quoting 17 U.S.C. § 411(b)(1)(B)).

The district court noted that this is the inverse of the situation faced in *L.A. Printex*.  Fiesta did not obtain a supplementary registration, but registered the 1461 Design separately.  Unlike the copyright owner in *L.A. Printex*, Fiesta could not correct its registration by removing the published designs, including the 1461 Design.  Had it done so, the '509 Registration would properly include only unpublished designs, but it could not serve as a basis for this action, because it would no longer include the 1461 Design.  The district court determined that because the Copyright Office would not have registered the 1461 Design as part of

an unpublished collection, § 411(b)(1)(B) was met and the registration was invalid as to the 1461 Design.

In light of the Register's response, we agree that § 411(b)(1)(B) is satisfied and that the inaccuracy in the '509 registration renders it invalid as to the 1461 Design. Fiesta included inaccurate information regarding the 1461 Design in its application, knew the information was inaccurate, and the Register would have refused registration of the collection if it had been aware of the inaccuracy. The district court properly declared the '509 registration invalid as to the 1461 Design, pursuant to § 411(b).[5]  Because a valid registration is a precondition to bringing an action for infringement, we affirm the district court's grant of summary judgment in favor of Defendants.

IV.   *Attorney's Fees*

Fiesta asserts that the district court erred by granting attorney's fees in favor of Defendants.  Exercising its discretion pursuant to 17 U.S.C. § 505, the district court

---

[5] Relying upon *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775 (9th Cir. 2002), Fiesta argues that the district court exceeded its authority by "cancelling" its registration.  Fiesta's argument is misplaced.  In *Syntek*, the plaintiff sought a declaration that the defendant's copyright was invalid because it did not comply with the applicable regulations by depositing the original source code.  We determined that, under the doctrine of primary jurisdiction, the issue was properly considered first by the Register of Copyrights, which has the authority to cancel a registration if the deposit material does not meet certain legal requirements.  *Syntek* did not address the issue before us— whether a plaintiff failed to satisfy the registration requirement of § 411(a) because an inaccuracy in the application rendered the registration invalid under § 411(b).  The district court did not "cancel" Fiesta's registration, but held it to be invalid pursuant to § 411(b), which was within the district court's authority under the statute.

considered several factors, including whether Defendants were the prevailing parties, the degree of success obtained, whether the purposes of the Copyright Act were furthered, whether an award against an impecunious party would create a chilling effect, the plaintiff's motivation in bringing suit (bad faith), whether the plaintiff's legal positions were frivolous or unreasonable, and the need for compensation and deterrence. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (non-exclusive factors to consider include "frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence"); *Kirtsaeng v. John Wiley & Sons, Inc*., 136 S.Ct. 1979, 1989 (2016) (in assessing fees, the court should give "substantial weight" to the objective reasonableness of the opposing party's position, "but also taking into account all other relevant factors").

> "The most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act." To reiterate, the Act's "primary objective" is to "encourage the production of original literary, artistic, and musical expression for the good of the public." While no longer a prerequisite to a fee award, the "objective unreasonableness (both in the factual and in the legal components of the case)" of a losing party's claim can be a relevant indicator of whether the Act's primary objective is being served by the litigation.

*SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) (citations omitted). "A successful

defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does." *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1043 (9th Cir. 2014).

The district court concluded that the following factors weighed in favor of a fee award: Defendants were the prevailing parties; the degree of success obtained ("modest weight"); promoting the purposes of the Copyright Act by encouraging defendants to advance meritorious defenses; no chilling effect; Plaintiff advanced some "objectively unreasonable" legal positions ("weighs slightly in favor of a fee award"); and compensating Defendants and deterring Plaintiff from pursuing claims based upon invalid registrations ("provides some support for a fee award"). The court found no "direct" evidence of bad faith on the part of Plaintiff and considered this factor to be "neutral."

Although Fiesta does not challenge the amount of the award, Fiesta argues that the district court abused its discretion in awarding fees. Fiesta contends that Defendants should not be considered prevailing parties because the legal relationship between the parties has not been materially altered and Fiesta may still seek relief for infringement of its 1461 Design, based upon the '252 registration. Defendants contend that they prevailed on the merits because the district court dismissed Plaintiff's claims with prejudice, and that reassertion of those claims is barred by res judicata. "[A] 'prevailing party' is one who has been awarded some relief by the court. . . . The key inquiry is whether some court action has created a 'material alteration of the legal relationship of the parties.'" *Cadkin v. Loose*, 569 F.3d 1142, 1148 (9th Cir. 2009) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603–604 (2001)). The district court dismissed Plaintiff's claim based upon the '509 registration with

prejudice and entered a final judgment on the merits; accordingly, Defendants are the prevailing parties. *Buckhannon*, 532 U.S. at 604.

Fiesta also argues that the district court should not have awarded fees because Defendants prevailed on a technical defense rather than on the merits. We have affirmed fees in favor of a defendant who "prevailed on the merits rather than on a technical defense, such as the statute of limitations, laches, or the copyright registration requirements." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 556 (9th Cir. 1996). We have not held that prevailing on a technical defense necessarily precludes an award of fees, however. The district court acknowledged that Defendants prevailed on a "technical defense" and found that "this factor provides modest weight in support" of a fee award. We discern no basis to disturb this conclusion.

The district court carefully considered and weighed the various factors relevant to a fee award. Its decision does not reflect "an inaccurate view of the law" or "clearly erroneous" findings of fact. *Cadkin*, 569 F.3d at 1146. Accordingly, the district court did not abuse its discretion in awarding attorney's fees to Defendants.

**AFFIRMED.**